IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PROSPERITY SYSTEMS, INC. | : | |
| | : | |
| v. | : | Civil No. CCB-10-2024 |
| | : | |
| NADEEM ALI | : | |

# MEMORANDUM

Prosperity Systems, Inc. ("PSI") has sued Nadeem Ali for trademark infringement and unfair competition, breach of contract, and breach of a covenant not to compete. Now pending before the court is PSI's motion for a preliminary injunction to prohibit Mr. Ali from using PSI's trademarks and service marks and from continuing to operate his formerly-franchised PIZZA BOLI'S pizza delivery restaurant. The motion has been fully briefed and a hearing was held on December 1, 2010, during which counsel was fully heard and the evidence was considered. For the reasons stated below, the plaintiff's motion will be granted in part and denied in part.

# BACKGROUND

PSI owns the franchise, PIZZA BOLI'S, which includes a pizza delivery and restaurant system. PSI has approximately 62 franchised restaurants in Maryland, Pennsylvania, Virginia, and Washington, D.C. PSI owns the federally-registered service mark PIZZA BOLI'S, and licenses others to use its marks in connection with the operation of pizza delivery restaurants. All of PIZZA BOLI'S franchisees are bound to operate according to the standards, specifications, and methods of the PIZZA BOLI'S system as set forth in PSI's franchise manual.

1

In addition to the manual, PSI provides franchisees with advertising materials with PIZZA BOLI'S mark. PSI also owns the domain name "pizzabolis.com" and operates a website with PIZZA BOLI'S mark using that domain name.

On July 15, 2009, PSI entered into a settlement agreement with Sukhera Inc., which is owned and operated by Mr. Ali. Pursuant to the settlement agreement, PSI agreed to grant Mr. Ali a franchise for the operation of a PIZZA BOLI'S restaurant located at 3524 12th Street, NE, Washington, D.C. (*See* Settlement Agreement, Def.'s Ex. 1, at ¶ 2.)[1] PSI and Mr. Ali signed the franchise agreement on July 15, 2009, the same day of the settlement agreement. In addition to the franchise provision, the settlement agreement also included an ambiguities clause and an integration clause. The ambiguities clause stated that if any language in the settlement agreement conflicted with the franchise agreement, the franchise agreement would control. (*See id.* at ¶ 4.) The integration clause stated: "This agreement constitutes the entire agreement between Plaintiff and Defendants. It supersedes all earlier or contemporaneous, oral or written agreements or understanding about this agreement." (*Id.* at ¶ 5.)

As part of the franchise agreement, Mr. Ali agreed not to use any advertising or promotional materials containing the PIZZA BOLI'S mark until they were reviewed and approved by PSI in writing. Mr. Ali also agreed not to "deliver to, or maintain[] a physical or intangible presence in, another franchisee's trade area, such as by . . . conducting or pursuing direct marketing or sales activities." (*See id.*) Pursuant to paragraph 15.2(f) of the franchise agreement, if Mr. Ali defaulted on his obligations under the agreement on three or more separate occasions during any twelve month period, PSI could terminate the franchise agreement. (*Id.* at

---

[1] Sukhera, through Mr. Ali, had been operating a restaurant under the PIZZA BOLI'S name at that site since 1993.

¶ 15.2(f)). PSI also maintained the right to terminate the agreement if Mr. Ali failed to cure any violation of the agreement within 30 days after written notice. (*Id.* at ¶ 15.2(h)).

On June 1, 2010, PSI sent Mr. Ali a notice of default, informing him that he was in violation of the franchise agreement for delivering orders and circulating advertising outside of his trade area and for operating the "pizzabolisdc.com" website without authorization. (*See* Notice of Default, Pl.'s Ex. A4.) In a separate letter also dated June 1, 2010, PSI notified Mr. Ali that he was being assessed a fine for unauthorized solicitation of customers and delivery to areas outside of his trade area during May 2010, and for placing advertising flyers in the Washington Post newspaper and conducting mail solicitations outside of his trade area from September 2009 through May 2010. (*See* Pl.'s Ex. A5.)

On July 29, 2010, nearly 60 days after providing Mr. Ali with written notice of his defaults and finding that he had not cured those defaults, PSI terminated his franchise agreement. (*See* Pl.'s Ex. A6.) PSI also requested Mr. Ali to cease using the PIZZA BOLI'S marks and proprietary operating system, return the PIZZA BOLI'S operating manual, assign all telephone numbers associated with his restaurant to PSI, and to comply with the post-termination restrictive covenant in paragraph 15.4 of the franchise agreement. Mr. Ali refused. To this day, he continues to operate a restaurant at 3524 12th Street, NE, Washington, D.C. using the PIZZA BOLI'S marks and the website "pizzabolisdc.com."

On August 6, 2010, PSI moved to enjoin Mr. Ali from continuing to use the PIZZA BOLI'S mark, and to compel him to shutdown his "pizzabolisdc.com" website and to return proprietary information to PSI. Mr. Ali has opposed the motion.

**ANALYSIS**

To obtain a preliminary injunction, a plaintiff must show: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, -- U.S. --, 129 S. Ct. 365, 374 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *rev'd on other grounds*, -- U.S. --, 130 S. Ct. 2371 (2010).

    A. *Likelihood of the Merits*

To prevail on a trademark infringement and unfair competition claim under §§ 32(1) and 43(a) of the Lanham Act, a plaintiff must show that it "has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). Here, it is undisputed that PSI owns a valid and protectable trademark in PIZZA BOLI'S and that Mr. Ali has continued to use the mark without authorization. The only disputed question is whether the unauthorized use is likely to cause confusion among consumers. Because there is a "high risk of confusion when a terminated franchisee continues to use the former franchisor's trademarks," *Merry Maids Ltd. P'ship v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998), PSI will likely succeed on the merits of its trademark infringement and unfair competition claims. *See also Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."); *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 356 (D. Md. 2004) ("[A] franchisee's continued use of the

franchisor's trademarks creates a sufficient likelihood of confusion to entitle [the franchisor] to at least nominal damages.").

PSI is also likely to prevail on its breach of contract claims. There is no dispute that Mr. Ali is in breach of his post-termination contractual obligations. Paragraph 15.3 of the franchise agreement requires Mr. Ali to assign to PSI all telephone numbers used in association with his PIZZA BOLI'S restaurant, to return all copies of the PIZZA BOLI'S manual, and to destroy all materials bearing the PIZZA BOLI'S mark following the termination of the agreement. (*See* Franchise Agreement at ¶ 15.3.) Mr. Ali has fulfilled none of these obligations.

There is also no question that Mr. Ali continues to operate his pizza restaurant in apparent violation of the covenant not to compete. Paragraph 15.4 of the franchise agreement prohibits Mr. Ali from operating a franchise business that "offers pizza or other food items that are substantially the same, as the [PIZZA BOLI'S] menu" within 20 miles of his restaurant for one year. (*See id.* at ¶ 15.4.) Due to its limited scope, time, and geography, the covenant not to compete may well be enforceable under Maryland law. *See, e.g.*, *NaturaLawn of America, Inc. v. West Grp., LLC*, 484 F. Supp. 2d 392, 399-400 (D. Md. 2007) (upholding a restrictive covenant that limited the defendant from engaging in the same type of business that the franchise operated within 20 miles of the licensed territory for two years).

Mr. Ali nonetheless contends that PSI is unlikely to succeed on the merits of its claims because PSI allegedly breached the July 15, 2009, settlement agreement between the parties. (*See* Def.'s Opp'n at 8.) Specifically, Mr. Ali contends that the integration clause in the settlement agreement "melds together the settlement and franchise agreements as [the] operative agreement" and that PSI's breach of the settlement agreement rendered the termination of Mr.

5

Ali's franchise agreement invalid. (*See id.* at 4 ¶ 5). Mr. Ali's argument notwithstanding, the integration clause does not "meld together" the settlement agreement and franchise agreement into one operative contract. The integration clause states: "This agreement constitutes the entire agreement between Plaintiff and Defendants. It supersedes all earlier or contemporaneous, oral or written agreements or understandings *about this agreement*." (Settlement Agreement at ¶ 5) (emphasis added). The clause simply integrates all prior understandings regarding the settlement itself. The ambiguity clause supports this interpretation. It clarifies that any conflicting language appearing in paragraph two of the settlement regarding the franchise relationship is superseded by the franchise agreement. (*Id.* at ¶ 6). Thus, the settlement agreement and the franchise agreement are two separate contracts between the parties. Violation of one does not necessarily affect the other.

Moreover, PSI's termination of the franchise relationship with Mr. Ali likely was valid even if PSI violated the settlement agreement, the franchise agreement, or both. A franchisor has proper grounds to terminate a franchise agreement regardless of its own breach if the franchisee has violated the terms of the agreement. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998) ("'[A] franchisor's right to terminate a franchisee exist independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated.'") (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992)); *7-Eleven*, 300 F. Supp. 2d at 358 (explaining that the proper remedy for a franchisee alleging that a franchisor breached the agreement is not to withhold its own performance under the agreement, but to either sue for

damages or to discontinue his acceptance of the benefits of the agreement *and then* discontinue his performance).

PSI has presented virtually uncontested evidence that Mr. Ali violated the franchise agreement in two ways: (1) by advertising outside his trade area by having advertisements inserted into the Washington Post and into Super Media mail solicitations,[2] and (2) by operating the website "pizzabolisdc.com" without written consent. Mr. Ali suggested at the preliminary injunction hearing that the Super Media advertisements were sent to areas outside of his trade area due to the mistake of Super Media. Even if the court accepts this as true, he has provided no evidence to contest PSI's assertion that he paid to have advertisements placed in the Washington Post that went to territories outside of his trade area or that he owns and operates the website "pizzabolisdc.com" in violation of the franchise agreement. Mr. Ali instead contends that PSI either affirmatively authorized the advertisements and operation of the "pizzabolisdc.com" or acquiesced to both.

First, there is no evidence that PSI authorized the advertisements or operation of the "pizzabolisdc.com" website. Pursuant to paragraph 10.2 of the franchise agreement, Mr. Ali was permitted to use the PIZZA BOLI'S marks only after receiving written consent from PSI. (Franchise Agreement at ¶ 10.2.) Mr. Ali has presented no evidence that PSI approved in writing either the Washington Post advertisements or the use of the "pizzabolisdc.com" website. Second, the doctrine of acquiescence, raised by Mr. Ali's counsel at the hearing, bars an infringement action only when the trademark owner, through "affirmative word or deed, expressly or impliedly consents to the infringement." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81

---
[2]*See, e.g.*, Nasir Decl. Pl.'s Ex. A, at ¶ 19; Khalid Dec. Pl.'s Ex. C, at ¶ 5; Mohiuddin Decl. Pl.'s Ex. F, at ¶ 3; Alhuraibi Decl. Pl.'s Ex. B, at ¶ 3.

F.3d 455, 462 (4th Cir. 1996). Acquiescence requires evidence of active, not merely passive consent by the trademark owner. *Id.* Mr. Ali asserts that PSI acquiesced to Mr. Ali's operation of the website because it had knowledge of the website at the time of the 2009 settlement agreement but failed to demand that he shut it down as part of the settlement. In fact, a declaration from John Nasir, owner of PSI, states that PSI knew about the unauthorized website and told Mr. Ali to shut it down. (*See* Nasir Decl. ¶ 2, Nov. 26, 2010, ECF No. 29.) PSI's failure to include this demand in the 2009 settlement agreement does not amount to an affirmative act giving Mr. Ali consent to operate the unauthorized website. *See Sara Lee*, 81 F.3d at 463 (holding that although entering into a settlement agreement is an affirmative act, estoppel by acquiescence requires the trademark owner to knowingly consent to the defendant's infringing use of the mark). There is no evidence that PSI ever changed its position that Mr. Ali's "pizzabolisdc.com" was an unauthorized use of its trademark PIZZA BOLI'S. Failure to demand that taking down the website be an express part of the settlement agreement hardly constitutes evidence that PSI affirmatively consented to the infringement.[3] Because Mr. Ali's affirmative defense of acquiescence is not applicable in this case, and for the reasons discussed above, PSI is likely to succeed on its claims.

---

[3]  At the hearing, Mr. Ali raised several cases in addition to *Sara Lee* to support his acquiescence argument, including *What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas*, 357 F.3d 441 (4th Cir. 2004); *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F. Supp. 198 (D. Md. 1988); and an opinion by Judge Bennett issued the day before the preliminary injunction hearing in *ONX Software Sys. v. Netrino, LLC*, No. 09-2206 (D. Md. November 30, 2010). None of these cases support Mr. Ali's argument. Indeed, none of these cases found that the trademark holder acquiesced to the alleged infringer's unauthorized use of the mark. *See What-A-Burger*, 357 F.3d at 452; *Sara Lee Corp.*, 81 F.3d at 463; *Quality Inns*, 695 F. Supp. at 214; *ONX Software*, No. 09-2206, at *13-14.

  Even if there were a delay in enforcement in this case, as PSI correctly highlighted in its oral argument, the franchise agreement precludes Mr. Ali's waiver argument. The franchise agreement includes a clause stating, "No waiver by us of any breach . . . of this agreement constitutes a waiver of any subsequent or other breach or waiver of the performance of any of your obligations under this agreement." (Franchise Agreement, Pl.'s Ex. A1, at ¶ 18.5).

*B. Irreparable Harm*

PSI is also likely to suffer irreparable harm from Mr. Ali's continued unauthorized use of its marks. Generally, a finding of irreparable harm is automatic in a trademark infringement case where the trademark holder has demonstrated unlawful use and the likelihood of consumer confusion. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42-43 (2d Cir. 1986) ("[A] licensor who establishes a likelihood of confusion as to product source in a trademark infringement suit simultaneously demonstrates the requisite irreparable harm essential to obtaining a preliminary injunction."); *see also Merry Maids*, 33 F. Supp. 2d at 445 ("Defendants' unauthorized use of plaintiff's trademarks gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is a substantial likelihood of confusion of the purchasing public, there may be no meaningful monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.") (internal citation omitted). PSI no longer has control over its mark due to Mr. Ali's continued unauthorized use of it, and PSI has no control over the quality of the pizzas Mr. Ali delivers to customers under the PIZZA BOLI'S name. Thus, it is likely that PSI will suffer irreparable injury to its good will and reputation for which there is no meaningful monetary recovery available.

Mr. Ali's claim that PSI's concern about consumer confusion is "specious" has no merit. Mr. Ali contends that because PSI has allowed American Pizza, a restaurant located in Mr. Ali's trade area, to operate as an unofficial PIZZA BOLI'S franchise, it has diluted its own brand name and may not now claim to be concerned about consumer confusion. Even assuming Mr. Ali's claims regarding American Pizza are true, whether Mr. Ali's unauthorized use of the

9

PIZZA BOLI'S mark will irreparably harm PSI is a separate question. Because Mr. Ali's unauthorized use of the PIZZA BOLI'S mark deprives PSI of control of its good will and reputation, PSI likely will suffer irreparable harm.

### *C. Balance of the Equities*

The balance of equities also tips decidedly in favor of PSI on its trademark infringement claim. If Mr. Ali is allowed to continue to use the PIZZA BOLI'S mark, PSI will have no control over its good will or reputation. As discussed above, there is a substantial likelihood that PSI would suffer irreparable harm as a result. Enjoining Mr. Ali from using the PIZZA BOLI'S mark, however, does not necessarily preclude him from operating a pizza business under his own name. Moreover, any loss of business he might suffer from not being linked to the PIZZA BOLI'S name is likely compensable in monetary damages.

Whether the balance of equities tips in favor of PSI on its breach of the covenant not to compete is a different matter. PSI argues that if Mr. Ali were allowed to continue operation of his restaurant even under another name, it would significantly hinder their efforts to sell a new franchise in Mr. Ali's former territory and could cause a cascading effect whereby other franchisees would terminate their agreements knowing that it would not prevent them from operating the business under their own name. (*See* Pl.'s Mot. for Prelim. Inj. at 25-26). PSI also argues that Mr. Ali brought upon himself any harm an injunction might inflict by failing to cure his defaults under the franchise agreement. The Fourth Circuit, however, bars a court from giving "short shrift" to the harm a defendant might suffer merely because it is self-inflicted. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002). Thus, the court may not

dismiss the significance of the harm Mr. Ali faces if he is enjoined from operating his restaurant simply because he may have brought the harm upon himself.

The court recognizes that PSI's hardships are serious and real, and that courts in the past have found the balance of equities to tip in favor of the franchisor when a former franchisee violates a covenant not to compete. *See, e.g.*, *NaturaLawn*, 484 F. Supp. 2d at 402. In this case, however, Mr. Ali's hardship outweighs PSI's. Mr. Ali is a small businessman. If the court enjoins him from operating his restaurant under his own name, he will likely lose his business and be unable, at least for some period of time, to support himself or his family. Further, he has been operating a pizza restaurant at that location for many years, arguably establishing his own good will with customers. There is a history of litigation among the parties as well that has not been fully resolved, though it does not bar enforcement of the franchise agreement. The balance of equities therefore tips in Mr. Ali's favor. Thus, the court will not enjoin Mr. Ali from owning or engaging in any pizza business under his own name at this time.

### D. Public Interest

The public interest also weighs in favor of enjoining Mr. Ali for continuing to use the PIZZA BOLI'S marks without authorization. "The purpose of a trademark is to protect the public from confusion about 'the identity of the enterprise from which goods and services are purchased.'" *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976)); *see also Merry Maids*, 33 F. Supp. 2d at 446 ("Preventing infringement . . . serves the public interest in preventing consumer confusion."). Because PSI terminated Mr. Ali's franchise agreement, he no longer has access to the ingredients that PSI requires all PIZZA BOLI'S franchises to use in making their pizza. He

nonetheless continues to sell pizza that consumers believe are made from officially approved ingredients. Consumers believe that they are getting PIZZA BOLI'S pizzas when they are not. It is in the public interest to prevent this type of consumer confusion. Thus, the public interest weighs in favor of granting a preliminary injunction to prohibit Mr. Ali from continuing to use the PIZZA BOLI'S mark.

### *E. Security Bond*

Pursuant to Federal Rule of Civil Procedure 65(c), a district court must fix a bond whenever it grants a preliminary injunction. Fed. R. Civ. P. 65(c). The district court has discretion in fixing the amount for the security bond, and in circumstances where the risk of harm is remote, a nominal bond may suffice. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n. 3 (4th Cir. 1999). Because it is highly likely that PSI will prevail, and because the covenant not to compete is not presently being enforced, a nominal security bond appears appropriate in this case.

## **Conclusion**

For the foregoing reasons, the plaintiff's motion for a preliminary injunction will be granted in part and denied in part. Plaintiff's counsel may submit a revised proposed Order, consistent with this opinion, within 14 days.

December 15, 2010                                          /s/
Date                                                       Catherine C. Blake
                                                           United States District Judge