# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PROSPERITY SYSTEMS, INC. | : | |
| | : | |
| v. | : | Civil No. CCB-10-2024 |
| | : | |
| NADEEM ALI | : | |

## MEMORANDUM

Prosperity Systems, Inc. ("PSI") has sued Nadeem Ali for trademark infringement and unfair competition, breach of contract, and breach of a covenant not to compete. Mr. Ali has filed a counterclaim against PSI, alleging breach of a settlement agreement, tortious interference with a contract, tortious interference with business opportunities, fraud, conversion, unjust enrichment, and misappropriation of trade secrets. Now pending before the court is PSI's motion to dismiss Mr. Ali's counterclaims. Also pending is Mr. Ali's motion for joinder of additional parties to his counterclaim. For the following reasons, PSI's motion to dismiss will be granted, and Mr. Ali's motion for joinder will be denied.

## BACKGROUND

PSI owns the franchise PIZZA BOLI'S, which includes a pizza delivery and restaurant system.[1] On July 15, 2009, PSI entered into a settlement agreement with Sukhera, Incorporated ("Sukhera"), a corporation owned and operated by Mr. Ali. The settlement agreement included

---

[1] Additional background of this litigation is set forth in a prior decision of the court. *See Prosperity Sys., Inc. v. Ali*, No. 10-2024, 2010 WL 5174939 (D. Md. Dec. 15, 2010). Familiarity with that decision is presumed.

five other signatories in addition to PSI and Sukhera: Mohammed Khalid;[2] 786 KK, LLC; KHA, Inc.; Rabia, Inc.; and Best Pizza, Inc. As part of the settlement agreement, PSI agreed to grant Mr. Ali a franchise for the operation of a PIZZA BOLI'S restaurant located at 3524 12th Street, NE, Washington, D.C.[3] (*See* Settlement Agreement, Pl.'s Mot. to Dismiss Counterclaim, Ex. 1 at ¶ 2.) PSI also agreed to include certain specific provisions in its franchise agreement with Mr. Ali, including the following clause: "During the term of this Agreement, we will treat you in all respects on the same basis that we treat all our franchisees." (*Id.* at ¶ 2(a).) PSI duly incorporated this language into the franchise agreement. (*See* Franchise Agreement, Pl.'s Mot. to Dismiss Counterclaim, Ex. 2 § 3.) The settlement agreement also obligated the signatories of the agreement to "use their best efforts" to sell the restaurant known as American Pizza. (*Id.* at ¶ 3.) Finally, all parties agreed to release each other from all claims and causes of action that existed prior to the effective date of the settlement agreement. (*Id.* ¶ 7.) On August 6, 2009, all claims by all parties were dismissed with prejudice.

On July 29, 2010, PSI terminated its franchise agreement with Mr. Ali due to his repeated violations of the contract, including delivering orders and circulating advertising outside of his trade area, and for operating the "pizzabolisdc.com" website without authorization. Despite the termination of his franchisee status, Mr. Ali continued to operate a restaurant at 3524 12th Street, NE, Washington, D.C. using the PIZZA BOLI'S marks and the website "pizzabolisdc.com." On August 6, 2010, PSI moved to enjoin Mr. Ali from continuing to use the PIZZA BOLI'S mark,

---

[2] The plaintiff refers to Mr. Khalid both as "Mohammed Khalid" or "Khalid Mohammed" throughout his briefing. For consistency, the court will refer to him as "Mohammed Khalid" or "Mr. Khalid."

[3] This business had been operated by Sukhera since 1993. The settlement agreement, however, appears to have assigned ownership of the franchise from Sukhera to Mr. Ali in his individual capacity.

to compel him to shutdown his "pizzabolisdc.com" website, and to return proprietary information to PSI. The court granted PSI's motion on December 15, 2010.

On November 15, 2010, Mr. Ali filed a counterclaim against PSI. At the same time, Mr. Ali filed a motion to join Sukhera as a counter-plaintiff and numerous additional counter-defendants to his counterclaim. PSI has filed a motion to dismiss all of Mr. Ali's counterclaims and has opposed Mr. Ali's motion to join additional parties.[4]

## ANALYSIS

### A. PSI's Motion to Dismiss the Counterclaim

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to

---

[4] On August 10, 2010, Sukhera filed a motion in D.C. Superior Court to reopen litigation and reinstate its claims against all parties to the settlement agreement, including PSI, arguing that the defendants violated the terms of the settlement agreement. PSI opposed the motion. As of the writing of this memorandum, the D.C. Superior Court has not yet ruled on whether it will allow Sukhera to reopen its litigation.

3

relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

   *1. Choice of Law*

As an initial matter, the parties dispute whether Maryland or District of Columbia ("D.C.") law governs Mr. Ali's counterclaim. PSI argues that Maryland law should govern Mr. Ali's counterclaim because the parties' franchise agreement included a forum selection clause stating that "all controversies will be construed under the laws of Maryland." (Franchise Agreement § 18.1.)[5] Mr. Ali contends that this forum selection clause does not control because his counterclaim does not involve a dispute over the franchise agreement, but rather raises issues sounding in tort. He argues that D.C. law governs his counterclaim because Maryland adheres to the choice of law rule *lex loci delicti* that the law of the state in which an alleged tort took place governs causes of action sounding in tort. *See Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Because PSI's motion to dismiss would be granted under either Maryland or D.C. law, the court need not resolve which law governs at this time, but will discuss the law of both states.

---

[5] The settlement agreement also provides that "This Agreement shall be governed by and construed according to the laws of the State of Maryland." (Settlement Agreement ¶ 8.)

4

## 2. Breach of Settlement Agreement (Count I)

Mr. Ali alleges that PSI breached the settlement agreement signed by the parties on July 15, 2009, in three ways: (1) by discriminating against Mr. Ali in five ways,[6] (*see* Countercl. ¶¶ 107-108, 110-113); (2) by failing to sell the restaurant American Pizza, (*id.* at ¶ 109); and (3) by conspiring with Javed Nasir, owner of PSI, Mohammed Khalid, owner of American Pizza, and other corporate entities to breach the settlement agreement (*id.* at ¶ 114). Mr. Ali has failed to state a claim against PSI for breach of the settlement agreement under any of these theories. First, the settlement agreement did not itself impose on PSI an obligation not to discriminate against Mr. Ali as a franchisee, but simply required PSI to include language in its franchise agreement stating that it would "treat [Mr. Ali] in all respects on the same basis that we treat all our franchisees." (Settlement Agreement ¶ 2(a).) PSI satisfied this requirement by incorporating the language into its franchise agreement with Mr. Ali. (*See* Franchise Agreement § 3.) The settlement agreement did not impose a separate obligation on PSI not to discriminate against Mr. Ali, as he seems to insist. As the court emphasized in its earlier memorandum opinion, the settlement agreement and the franchise agreement "are two separate contracts between the parties. Violation of one does not necessarily affect the other." *Prosperity Sys., Inc. v. Ali*, No. 10-2024, 2010 WL 5174939, at *3 (D. Md. Dec. 15, 2010). If PSI did discriminate against Mr. Ali as a franchisee, Mr. Ali would have a claim against it for breach of the franchise agreement, not the settlement agreement.

Second, there is no apparent basis to hold PSI contractually liable under the settlement

---

[6] Mr. Ali alleges that PSI discriminated against him by diverting online orders away from his store (Countercl. ¶ 108, 113); raising his licensing fees without raising the licensing fees of other franchisees (*id.* at ¶ 110); fining him for territorial infringements while not imposing fines on other franchisees (*id.* at ¶ 111); and demanding that he disable the website pizzabolisdc.com even though other franchisees operated their own websites (*id.* at ¶ 112).

agreement for the alleged failure to sell American Pizza. The settlement agreement stated: "Defendants will use their best efforts to sell the pizza restaurant known as American Pizza . . . by placing it for sale within a reasonable time at a marketable price. No reasonable offer shall be refused." (Settlement Agreement ¶ 3.) Although this language, on its face, obligated all defendants party to the settlement agreement to sell American Pizza, PSI had no ownership interest in the restaurant. Only Mohammed Khalid, the owner of American Pizza, had the legal authority to sell the restaurant. (*See* Countercl. ¶ 49 (identifying Mohammed Khalid, not PSI, as the owner of American Pizza).)

Acknowledging PSI's lack of ownership in American Pizza, Mr. Ali argues, in the alternative, that PSI conspired with Mr. Khalid in the operation of American Pizza to infringe on the exclusive territory of Mr. Ali's franchise.[7] (*See* Def.'s Opp'n at 3-4, ECF No. 51.) Again, even if Mr. Ali's allegations are true, and PSI conspired with Mr. Khalid to sell pizzas made by American Pizza in Mr. Ali's territory, this does not amount to a breach of the settlement agreement. The franchise agreement, not the settlement agreement, guarantees Mr. Ali an exclusive trade territory. (*See* Franchise Agreement § 3.) The settlement agreement merely required PSI to include a trade area clause in its franchise agreement with Mr. Ali, which PSI duly included. It did not create a separate guarantee of territorial exclusivity to Mr. Ali. Thus, if PSI did infringe on Mr. Ali's exclusive territory, Mr. Ali could possibly state a claim against it for breach of the franchise agreement. He does not, however, have grounds for relief stemming from breach of the settlement agreement. Accordingly, Mr. Ali's breach of settlement agreement claim against PSI will be dismissed.

---

[7] Mr. Ali has not alleged that PSI conspired with Mr. Khalid not to sell American Pizza.

### 3. Tortious Interference with Contract (Count II)

Mr. Ali alleges that PSI conspired to tortiously interfere with the settlement agreement and the franchise agreement. (Countercl. ¶¶ 116-118.) The elements for this tort differ slightly in Maryland and D.C.,[8] but in both jurisdictions, "[a] claim of tortious interference with contract cannot lie against a party to the contract." *Ambling Mgmt. Co. v. Univ. View Partners, LLC*, 581 F. Supp. 2d 706, 716-17 (D. Md. 2008) (citing *Kaser v. Fin. Protection Mktg., Inc.*, 831 A.2d 49, 54 (Md. 2003) and *Travelers Indem. Co. v. Merling*, 605 A.2d 83, 89 (Md. 1992)); *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 48 (D.D.C. 2010) ("The District of Columbia adheres to the rule that the defendant's breach of his own contract with the plaintiff is of course not a basis for the tort of interference with contractual relations.") (quoting *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C. 1991)) (internal quotation marks omitted).[9] The reason for this rule is that a suit for a breach of contract is the more appropriate remedy for such a claim than one sounding in tort. *Raskauskas*, 589 A.2d at 26; *Parks v. CAI Wireless Sys., Inc.*, 85 F. Supp. 2d 549, 556 (D. Md. 2000). PSI was a party to both the settlement agreement and the franchise agreement. Thus, Mr. Ali cannot state a claim against PSI for tortious interference with either contract. Accordingly, Count II of Mr. Ali's counterclaim will be dismissed as to PSI.

### 4. Tortious Interference with Business Opportunity (Count III)

---

[8] In Maryland, the elements for tortious interference with contract are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Protection Marketing, Inc.*, 831 A.2d 49, 53 (Md. 2003) (citation omitted). In D.C., the elements are: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *CASCO Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (internal quotations omitted).

[9] *See also AP Links, LLC v. Global Golf, Inc.*, No. 08-705, 2008 WL 4225764, at *4 n.8 (D. Md. Sept. 2, 2008) (explaining that because a party cannot tortiously interfere with its own contract, it also cannot enter into a conspiracy to do so) (citing *Travelers Indem. Co.*, 605 A.2d at 90).

Both Maryland and D.C. treat tortious interference with business opportunity as a claim for tortious interference with a business relationship. *See Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002) (explaining that tortious interference with prospective business opportunity is the same as interference with a business relationship) (citing *Medical Mut. Liab. Ins. Soc'y v. B. Dixon Evander and Assocs.*, 628 A.2d 170, 171 (Md. 1993)); *CASCO*, 834 A.2d at 84 ("The elements of tortious interference with prospective business opportunity mirror those of interference with contract) (citing *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986)). To establish tortious interference with a business relationship, a plaintiff need not show an existing contract, but merely an existing business relationship or prospective advantageous transaction. *See K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989); *CASCO*, 834 A.2d at 84.

The factual basis for Mr. Ali's allegation that PSI tortiously interfered with its business opportunity is not altogether clear from his counterclaim. It appears that Mr. Ali alleges that PSI tortiously interfered with its business opportunity by (1) conspiring to violate the franchise agreement in various ways, (Countercl. ¶¶ 121, 122, 124); and (2) conspiring to undercut Mr. Ali's relationship with his customers by diverting orders placed within his exclusive territory to other pizza restaurants, (*id.* at ¶¶ 120, 123, 125). Like tortious interference with contract, a plaintiff cannot state a claim against a defendant for interference with business opportunity if the business opportunity is based on a contract with the same defendant. *See K & K Mgmt.*, 557 A.2d at 974; *CASCO*, 834 A.2d at 84 (emphasizing that the elements of tortious interference with prospective business opportunity mirror those of interference with a contract). Moreover, any claim that PSI tortiously interfered with Mr. Ali's business opportunities with prospective

customers by diverting orders from his store, (*see* Countercl. ¶¶ 81-87, 91.), is indistinguishable from an alleged breach of the franchise agreement. *See, e.g.*, *K & K Mgmt.*, 557 A.2d at 977 (concluding that the plaintiffs' claim against the defendant for tortious interference with their customers was indistinguishable from a breach of contract claim because the plaintiffs' right to customers was based on their contract with the defendant). Mr. Ali's right to those customers' orders depended on his franchise agreement with PSI. While Mr. Ali may be able to recover lost profits from a loss of customer orders as damages for breach of the franchise agreement, he has not stated such a claim against PSI. Accordingly, Mr. Ali's tortious interference with business opportunity claim will be dismissed.

     *5. Fraud (Count IV)*

A claim that sounds in fraud is subject to the heightened pleading standards of Rule 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249-50 (D. Md. 2000). Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These "circumstances" include "the time, place, and contents of . . . false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed Prac. & Proc. § 1297 (2d ed. 1990)). "Mere allegations of 'fraud by hindsight' will not satisfy the requirements under Rule 9(b)." *Id.* (quoting *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6).

Mr. Ali has not satisfied the heightened pleading standards of Rule 9(b). Mr. Ali alleges

that "[a]s part of the settlement, Prosperity allowed access to [Mr. Ali] to its online ordering system" and that it "undertook a fraudulent scheme, within days, to re-direct and divert numerous orders" from Mr. Ali's restaurant to other pizza stores. (Countercl. at ¶¶ 81-82.) He also points to three specific orders that were allegedly diverted away from his store. (*Id.* at 83-85.) Beyond these allegations, Mr. Ali's counterclaim remains vague regarding the details of the alleged "fraudulent scheme" or PSI's involvement in defrauding Mr. Ali. He merely states that "Prosperity . . . and its employees, conspired among themselves, and directly and intentionally caused this diversion and were actively and maliciously complicit in the diversion and redirection of orders." (*Id.* at ¶ 91.) He does not plead facts alleging the time, place, or contents of any false representations made by PSI or its representatives to Mr. Ali. This is not sufficient to state a claim for fraud under the heightened pleading standards of Rule 9(b).

Furthermore, even if the court assumes that Mr. Ali's counterclaim meets this heightened pleading standard, he does not state a claim for fraud under either Maryland or D.C. law.[10] Mr. Ali's allegations of fraud are founded on PSI's alleged breach of its contractual agreement to honor Mr. Al's exclusive territory. He does not allege that PSI induced him into signing the franchise agreement or made any fraudulent representations about its intent to perform on the contract. Because mere failure to perform a contract does not convert a breach of contract into a fraud, *see, e.g.*, *Sims v. Ryland Grp., Inc.*, 378 A.2d 1, 3 (Md. Ct. Spec. App. 1977), and Mr. Ali

---

[10] The elements of a fraud claim in both D.C. and Maryland are: (1) a false representation of material fact; (2) known to be false when made or made with reckless indifference to the truth; (3) for the purpose of deceiving or defrauding some other person; (4) that person took action in reliance upon the misrepresentation, and the person had a right to rely upon it; and (5) that actual damages were suffered from the misrepresentation. *See Suburban Properties Mgmt. v. Johnson,* 204 A.2d 326, 329 (Md. 1964); *Blake Constr. Co., Inc. v. C.J. Coakley Co., Inc.*, 431 A.2d 569, 577 (1981).

10

has failed to allege any specific facts that PSI never intended to honor the franchise agreement, Count IV of Mr. Ali's counterclaim will be dismissed.

      6. *Conversion (Count V(a))*[11]

Mr. Ali alleges that PSI converted money belonging to him by diverting customers from his PIZZA BOLI'S restaurant to other pizza delivery stores. (Countercl. ¶ 133-134.) In Maryland, conversion "is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (Md. 1954)). Likewise, in D.C., "conversion is a wrongful taking or wrongful retention of property after a rightful possession." *Shehyn v. District of Columbia*, 392 A.2d 1008, 1012 (D.C. 1978). In both jurisdictions, failure to perform on a contract does not amount to conversion. *See Fink v. Pohlman*, 582 A.2d 539, 543 (Md. Ct. Spec. App. 1990) ("[M]ere failure to perform under a contract is not enough" to establish a conversion under a contract) (citation omitted); *Choharis v. State Farm Fire & Casualty Co.*, 961 A.2d 1080, 1089 n.13 (D.C. 2008) ("Failure by a contracting party to pay the contract price or debt, however, is not conversion but merely breach of contract.") (quoting *Brand Iron, Inc. v. Koehring Co.*, 595 F. Supp. 1037, 1040 (D. Md. 1984)). "[A] positive, tortious act is required to establish a conversion under a contract." *Fink*, 582 A.2d at 543.

Here, Mr. Ali alleges that PSI engaged in positive, tortious conduct by diverting customers away from his restaurant through fraud and deceit. The court, however, has already concluded that Mr. Ali has failed to state a claim against PSI for fraud or tortious interference

---

[11] Mr. Ali's counterclaim contains two count fives. The court will refer to the first count five (alleging conversion) as count V(a), and the second count five (alleging unjust enrichment) as count V(b).

with Mr. Ali's business opportunities. His claim for conversion, therefore, is nothing more than an allegation of breach of contract. Moreover, based on the facts stated in his complaint, PSI itself never took possession of the money from customers it allegedly diverted to other pizza stores. Accordingly, Count V(a) of Mr. Ali's counterclaim will be dismissed.

7. *Unjust Enrichment (Count V(b))*

In both Maryland and D.C., a claim for unjust enrichment is barred where an express contract exists. *Kwang Dong*, 205 F. Supp. 2d at 497 (citing *United States v. EER Systems Corp.*, 950 F. Supp. 130, 133 (D. Md. 1996) and *Schiff v. AARP*, 697 A.2d 1193, 1194 (D.C. 1997)). Thus, the franchise agreement between PSI and Mr. Ali bars his claim for unjust enrichment. Although a handful of exceptions to this general rule exist, *see, e.g. County Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608-09 (Md. 2000) (where there is evidence of fraud or deceit or when the express contract does not fully address the subject matter), none of the exceptions apply here.[12] The court has already determined that Mr. Ali did not adequately plead fraud against PSI. Even if he did, however, Mr. Ali has not alleged that PSI was unjustly enriched by diverting orders from customers to other pizza stores. Mr. Ali has alleged that Khalid Mohammed and Javed Nasir, in his individual capacity, received money from these diverted orders, not PSI. Accordingly, Mr. Ali's claim against PSI for unjust enrichment will be dismissed.

8. *Misappropriation of Trade Secrets (Count VI)*

---

[12] Mr. Ali invokes *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58 (D.C. 2005), to argue that the existence of an express contract does not serve as an automatic bar to his unjust enrichment claim. In that case, however, the D.C. Court of Appeals held that a defendant's contract with a third party did not bar a plaintiff from bringing an action for unjust enrichment against the defendant. This exception does not apply to Mr. Ali's claim against PSI.

12

Mr. Ali alleges that PSI misappropriated the identity of his customers and their email addresses through PSI's online ordering system. In both Maryland and D.C., misappropriation of a trade secret is defined as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means [or] disclosure or use of a trade secret of another without express or implied consent." MD. CODE ANN., COM. LAW § 11-1201(c)(1)-(2); D.C. CODE § 36-401(2)(A)-(B). Under this standard, Mr. Ali has failed to allege that PSI acquired a trade secret "of another." The customer information Mr. Ali alleges PSI to have misappropriated was provided directly to PSI through its online ordering system. Mr. Ali admits this fact in his counterclaim, stating: "As part of the settlement, Prosperity allowed access to [Mr. Ali] to its online ordering system . . . accessible to the public to make online orders by entering the customer's zip code and the type of food wanted." (Countercl. ¶ 81.) Once customers provided information on PSI's website, PSI would then transmit the customer information to franchisees who participated in the online ordering system. Thus, the customer information was not Mr. Ali's trade secret. To the extent that it was, PSI had full access to the information because the customers provide their email addresses to PSI directly. PSI, therefore, could not have misappropriated the information. *See, e.g.*, *Tobacco Tech., Inc. v. Taiga Int'l N.V.*, 626 F. Supp. 2d 537, 553 (D. Md. 2009) (explaining that when a defendant has explicit authorization to a trade secret, use of the information does not amount to misappropriation of a trade secret "of another"). Accordingly, Count VI of Mr. Ali's counterclaim will be dismissed.

### B. Mr. Ali's Motion to Join Additional Parties

Mr. Ali has moved to join Sukhera as a plaintiff to his counterclaim. He also has moved to join as defendants Javed Nasir, in his individual capacity; Mohammed Khalid, in his

individual capacity; Knife and Fork, Inc.; 786 KK, LLC; KHA, Inc.; Best Pizza, Inc.; 786 LLC; and Rabia, Inc. Federal Rule of Civil Procedure 13(h) allows parties not originally part of an action to be joined to a counterclaim in accordance with Rules 19 and 20. *See* Fed. R. Civ. P. 13(h). To further the general objectives of Rule 13, "courts have typically construed subdivision (h) liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy." *Lanier Bus. Products v. Graymar Co.*, 342 F. Supp. 1200, 1202 (D. Md. 1972). Federal law is clear, however, that "a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party." *Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 480 n.3 (D. Md. 2009) (quoting 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1435, at 271 (3d ed. 2004)).

In *Kirkcaldy v. Richmond Cnty. Bd. of Educ.*, 212 F.R.D. 289, 299 (M.D.N.C. 2002), a plaintiff sued a defendant for sexual harassment, naming the Richmond County Board of Education ("Board") as a co-defendant. The defendant then filed a cross-claim against the Board and individual Board members for violation of his due process rights pursuant to 42 U.S.C. § 1983. After dismissing the defendant's cross-claim against the Board for independent reasons, the court also dismissed the defendant's cross-claim against the individual Board members for failure to satisfy the necessary prerequisites of Rule 13(h). *Id.* (explaining that because the court dismissed the defendant's cross-claim against the Board, his cross-claim was directed solely against persons not already a party to the action, which was a violation of Rule 13(h)). Because the court has dismissed his counterclaim against PSI, Mr. Ali cannot meet this necessary prerequisite. Mr. Ali's counterclaim is currently directed solely at individuals and entities not

originally parties to this action. Moreover, to allow Mr. Ali to join additional parties to this action will not further the ends of Rule 13. Mr. Ali is currently pursuing an action against the proposed counter-defendants in D.C. Superior Court. Thus, allowing him to join additional parties would serve the opposite purpose of avoiding multiplicity of litigation. Accordingly, Mr. Ali's motion to join additional parties to his counterclaim will be denied.

Mr. Ali also seeks to join Javed Nasir and Mohammed Khalid pursuant to Federal Rule of Civil Procedure 14. Under Rule 14, "a defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). PSI's original complaint against Mr. Ali alleges breach of the franchise agreement, service mark infringement, and unfair competition. Mr. Ali does not state anywhere in his motion for joinder how Mr. Nasir or Mr. Khalid could be liable to him for any damages if PSI prevails on its claims. Indeed, Mr. Ali's allegations against Mr. Nasir and Mr. Khalid assert separate claims for breach of the settlement agreement and various tortious conduct. (*See* Def.'s Mot. for Joinder ¶ 5.) This type of claim is not permitted under Rule 14(a)(1). Accordingly, Mr. Ali's motion to join Mr. Nasir and Mr. Khalid under Rule 14 will be denied.

## **Conclusion**

For the foregoing reasons, PSI's motion to dismiss Mr. Ali's counterclaim will be granted, and Mr. Ali's motion to join additional parties will be denied. A separate Order follows.

April 22, 2011                                          /s/
Date                                                   Catherine C. Blake
                                                            United States District Judge